Case number 241769 B.A. et al. versus Tri County Area School. Argument not to exceed 15 minutes per side. Mr. Fitzpatrick, you may proceed for the appellants. Good afternoon, Your Honors, and may it please the Court. Connor Fitzpatrick on behalf of the appellants, D.A. and X.A. I'd like to reserve three minutes for rebuttal. From a radio edit of a hit song to a child saying H-E double hockey sticks, sanitized expressions are a staple of the English language. By prohibiting middle and high school students from wearing apparel with the Let's Go Brandon political slogan because it means something else, defendants ignored centuries of history and tradition in the English language of replacing profanity with sanitized substitutes. The district court's view would turn everything from Gosh Darn to a Kidz Bop album into censorable profanity, an approach which defies common sense and no court had ever You agree that if the T-MIM sweatshirts had said the actual F dot dot dot Biden or F dot dot dot Trump, that the school could have prohibited that because of the use of the F word? That's absolutely correct, Your Honor. We do agree with that, and the reason is Frazier. Frazier did not talk about vulgarity and profanity in a vacuum. It referenced specific examples of types of speech and material that is commonly restricted to minors. And with respect to profanity, Judge Moore, Frazier pointed to Pacifica, which was about George Carlin's seven words you can't say on television. So regardless of whether you're talking about the President of the United States or the Chicago Bears, kids can't use the F word in school. But these kids didn't do that. They used what was a commonly known substitute. Let's go, Brandon, for F dot dot dot Biden. That's exactly correct, Your Honor, and that's what we expect kids to do at school. We expect kids to not swear at school. We have rules against children swearing in school. And so these children didn't swear, and I'll give Your Honor an example. Suppose a child is playing at recess, and they're running across the playground. They stumble and they scrape their knee, and they shout out, fudge. Well, we all know what that kid means, but no teacher is going to write that student up for profanity because the student didn't swear. Profanity Why isn't it within the discretion of the school officials who are ultimately accountable to an elected school board to decide that this phrase is essentially the same thing as saying the F word in this context in 2024, you know, whenever it is in this election? I mean, why is that not their decision? And why is that not consistent with the kind of history and tradition of the First Amendment? Your Honor, that approach violates Tinker. Tinker squarely held, and that's our North Star here, that the Constitution protects the right of students to wear political apparel to school. So that's the starting position. And these exceptions... Wait a minute, I'm confused. I thought the starting position was the school can ban profanity. I mean, Fraser is an exception, I suppose, to Tinker, right? But, you know, if you say F the draft or F Joe Biden or whatever it is, you can be punished for that, right? You agree the school can punish you for that? If you use the actual swear words, yes, Your Honor. Okay. But in some sense, the profanity trumps the political nature of the speech. It does, Your Honor. And a good example of this is in... So then who decides what is profane or not? The courts do. And I'll give Your Honor an example. In Morse, the Supreme Court quoted the Second Circuit in Thomas, where it said that students have the right to wear Tinker's armband, but not Cohen's jacket. Cohen's jacket, of course, being from Cohen versus California, which said F word, the draft. But if a phrase meaning a profane phrase is sufficient to denote it as profanity, that would mean a child could not even wear a jacket saying Cohen's jacket on the back because a school administrator could see that and think, well, we know you mean the message that's actually on the back of Mr. Cohen's jacket. That is not a manageable standard. We know from Frazier that this... What is the manageable standard then? I'm confused. You're saying that if it's one of the Pacifica words, the school board can ban it. If it's not, anything goes? No, Your Honor. Except for Tink, obviously, if it was disruptive, blah, blah, blah. But I mean, what are the list of words that can be banned then? What's the new Pacifica? So, Your Honor, we know from Frazier that it talks about vulgarity and profanity. So we're not arguing that it's just limited to George Carlin's seven words you can't say on television. What we are saying is that there has to be some argument that something in the child's expression constitutes a profanity or vulgarity of the type Frazier was referring to. And a good example of when that standard wasn't met is the Chandler decision that we discuss in our briefing. There, the Ninth Circuit dealt with an assertion that students should not be allowed to wear buttons that say scab at school in reference to the replacement teachers that were there during a teacher strike. And the Ninth Circuit said that that is not the kind of profanity and vulgarity that the Frazier court was talking about. I mean, I'm sorry if I'm dense, but I didn't know that scab had any profanity or vulgarity to it. I mean, I know people take offense to it, but where is it profane or vulgar? It's not profane or vulgar, Judge Moriba, and going to Judge Nalbandian's question, that was the Ninth Circuit's point there, which is that the, which is that we don't just let school districts decide what is profane and not profane. We conduct a constitutional analysis as required by Tinker to see if there's any way that it could actually be fairly considered profane with what Frazier was talking about. Frazier did not talk about materials that are inappropriate for children in a vacuum. It used the traditional obscene as to minors standard as a guidepost. So it cited Ginsberg, which held that nude magazines can be prohibited when it comes to selling them to minors. It cited Pico, which talked about pervasively vulgar and sexual books. And it talked about Pacifica. Now, those are not, those are not specific categories where if it's not in that, anything goes. So is your position that if, unless you have an explicit vulgarity in the speech, that Tinker applies? Yes, Your Honor. So Tinker applies when a student is expressing themselves subject to the narrow exceptions in Frazier. And you're arguing for a narrow reading of the exception for vulgarity or obscenity or whatever, whatever that, whatever those bad things are that you can't say in school. You're saying that's a narrow category for that per se ability of the school to ban it. And you're arguing for a broader, a broader reading of Tinker to apply. And I'm particularly interested in the Confederate flag cases that we've decided. And it seems like we've always applied, except for I think there maybe is a concurrence saying that we shouldn't apply Tinker. But it seemed like most of our published decisions have applied Tinker to the Confederate flag t-shirt cases. And obviously Confederate flag connotes some really bad stuff. But we didn't put it in that category per se. So I'm struggling with why we should, why shouldn't we just apply that same standard here of keeping that per se category pretty narrow and going into the Tinker land. Since we did it for a Confederate flag, why can't we do it here for, let's go Brandon. So Judge Bush, I think you're exactly right that this should be construed as a very narrow exception. And it can be construed in a very common sense fashion. Look to the child's expression. Is there a swear word there? Is there a profanity there? If there is, it can be prohibited under Frazier. If it's not, you can't. What is the swear word or profanity in Frazier itself? I mean, there's just a lot of innuendo but I'm not sure I would categorize anything that was said as a swear word. That's correct Judge. And to be clear, the court in Frazier, and this is on page 687 of the opinion, did not deem the student council speech in Frazier to be profane. It deemed it to be quote sexually explicit and graphically so. So Frazier creates sort of two buckets that a school is allowed to prohibit. And there was no sexually explicit phrase here. I mean, no one was advocating having sex with the president, right? That's exactly right. They were advocating an emphasis of disfavor of the president using this particular phrase. That's exactly right. It's not code for having sex. And that's what it was in Frazier. Right. And if we look to other instances where profanity is prohibited as a guidepost, like Frazier did, we can see that let's go Brandon is categorically different. But it was code, as everyone understood, as this phrase developed, it was code for F-U-C-K, a particular person. Just as if it had said F with asterisks, a particular person, regardless of which person it is, the school says that it would have banned it. The school said, it's fine for you to say I'm in favor of President so-and-so. I'm against President so-and-so. You can have political statements according to the school, according to the record here. But what was in the view of the school, what was vulgar and or profane was the euphemism, and you started out calling it a euphemism, the alleged euphemism for F-U-C-K, a particular person. So a couple of thoughts there, Your Honor. First is, the idea that this only serves as code for profanity ignores the profound political impact and usage the phrase had as soon as it happened. We explained in our brief that multiple members of Congress have used let's go Brandon on the floor of the United States House of Representatives in policy speeches. And that was one of the key factors Frazier relied on to deem Frazier's speech unprotected, that it would violate decorum rules. And second, Your Honor. So the schools in your position then have to allow any kind of speech that Congress allows? No, that's not right, Your Honor. However, if we look to guide marks, for example, what can air on TV and radio and what's permissible in Congress, if we look to the traditional benchmarks where we know profanity is prohibited, let's go Brandon passes all of those. My friends on the other side have not provided a single example of anyone, anywhere, ever deeming let's go Brandon to be profane or censoring it. And Judge Bush, returning to your earlier question about how we interpret Tinker, Tinker is our North Star here. Because what it means is that schools can always step in if- So you're not taking the position they couldn't ban let's go Brandon. They just need to show that there's some disruption in the school. That's exactly right, Your Honor. Tinker always stands ready as a circuit breaker. If a student's expression actually starts causing disruption at school, schools are always empowered under Tinker to step in. So is the remedy here, if we agree with your position, to remand it for a consideration under Tinker? Your Honor, I see my time is up. May I briefly respond? Your Honor, we believe that as a matter of law, let's go Brandon is not prescribable under Frazier. My friends on the other side have conceded a total absence of substantial disruption, and that's what's relevant under Tinker. So at the point that the only exception they're arguing is Frazier, and it is a matter of law cannot satisfy Frazier, the proper course here is a reversal of the district court's decision. Thank you. Good afternoon. May it please the Court, Annabelle Shea on behalf of appellees. There's no dispute from the parties that let's go Brandon is a phrase that originated from a crowd chanting F Joe Biden at an Ascot race. So there really is no dispute that the phrase means F Joe Biden. I want to ask you about these Confederate flag cases. We always apply Tinker in those cases. Why shouldn't we apply Tinker here? And those cases are different in that they differ in a very important respect. When you look at those cases in terms of the basis of those regulations and why the school district prohibited the Confederate flag, it's because those cases were, it was based on the specific political and racial viewpoint. It was all tied to the... Isn't the Confederate flag deeply offensive? Oh, I would agree, yes. So isn't it just as offensive as let's go Brandon? Well, where it's different and where it differs in a very important respect of why the let's go Brandon would apply under Frazier versus Tinker is the regulation is based on this profane message as opposed to it was completely unrelated... More profane to say let's go Brandon than to display a Confederate flag? I'm not saying that, Your Honor. I'm saying when you look at the Frazier case and you look at the Boroff case, those cases from this court in 2000, that those cases really look at, is it profane to consider profane from the perspective of in the school context? Is there any case that has ever said that the Confederate flag is profane? Not any case that I have found in my research. All the Confederate flag cases from this circuit have analyzed it under free, I mean under Tinker, Your Honor. And did I answer your question, Judge Bush? Yeah, but I think we actually have a quote in one of those cases where you talk about how profane it is. I mean, I thought Defoe talked about the Confederate flag, you know, but we cited, well, it's confusing because Judge Rogers' opinion, doesn't it talk about Morse? I mean, it gets pretty close to saying, I mean, Judge Moore's opinion in Barr, I think, doesn't talk about it in the Frazier, and I don't even know what cases were decided when, but it's more of a political symbol and therefore Tinker, but then Defoe seems to suggest, I mean, maybe Morse was an intervening decision or something, but Morse suggested that it was vulgar. Yeah, but Barr does mention Morse in the footnote when talking about plainly offensive speech. I understand that the Confederate flag cases involve speech that offends people, but it's my understanding that Confederate flag cases don't involve, by virtue of just showing the Confederate flag, that it's profane, but let's focus here on the language that was used, and you're starting out saying that everyone knew what this language meant. Yes, and I did find a quote that I just wanted to briefly address the court of the Confederate flag really quick, and we'll go back to the language. But in the Castorina case from 2001, in that case this court held that Tinker applied to the banned Confederate flag since the regulation targeted a passive expression of a racial viewpoint. So it's really based on this idea of a racial viewpoint, which is also, it goes to the political viewpoint, and why it was regulated under Tinker versus Frazier. It went to race, which we tend to think of racial epithets as being as bad as sexual epithets. Yeah, I would agree with you. In those cases, one of the biggest distinguishing factors that we have is Frazier is not always brought up in a lot of these cases of that, that it should apply. And that's why we can really only find Boroff is the controlling case. Well, Boroff, wasn't the reasoning in that case that the Marilyn Manson T-shirt was advocating drug use? That was one of the reasons. It was overall what the ban stood for. The court found that it was reasonable for, based on the vulgarity of the ban, based on the drug use was another piece of it. You're right, Your Honor. But another big piece is that what the ban stood for was very vulgar and contrary to the educational mission of the school environment. And because it was unrelated to any religious or political viewpoint, that Frazier applied rather than Tinker. Am I correct in recalling that in the record in this case is the statement that the school would have, the school in question in this case, or the school board, would have allowed political speech. So any student could have worn a T-shirt that says, I'm voting for Biden, or I'm voting for Trump. Well, these are middle school students, so I would vote for Biden. I would vote for Trump if I could. But I'm going to give my support. So the school had said, these are fine, right? Yes, Your Honor. And in fact, there was evidence introduced in the record that students did wear MAGA hats to school. And it wasn't the regulation or the prohibition of this Let's Go Brandon sweatshirt at school had nothing to do with the political viewpoint that was being expressed. It was simply that the administrators saw that it had a profane meaning based on the meaning of F. Joe Biden associated with that phrase of why they prohibited it under the dress code. Can we take into account the fact that Let's Go Brandon is used throughout society, including by the person that the slogan was targeted at. President Biden actually incorporated some of it in a DART Brandon, I think, campaign that he did. Can we take that into account in determining whether or not this decision of the school board was reasonable? I think it goes to the point that it's well known in this case of what it meant. And even the XA and DA, they testify that— But the fact that it's allowed in all these settings, including by the person who supposedly is targeted, can't that inform our judgment as to whether or not this is a reasonable determination by the school board? Well, and where I would disagree with you, Judge Bush, respectfully, is just because under Tinker and Frazier, we have to apply the First Amendment in the context of the special context of the school environment. And even in Frazier, the Supreme Court indicated that if this speech was given— But in Frazier, you didn't have all of society doing what this particular student was doing. Well, and this is why this becomes a case— This was an isolated instance where one student was making the speech. Here you have, throughout society, you have this phrase being used. How can you say that one school district can have this authority to ban it where it's not banned anywhere else? Well, I would say that this was a discretionary decision made by an administrator that felt as though the message from the Let's Go Brandon, what it actually meant of Joe Biden— It's also giving power to an administrator over a parent. The parent apparently gave it to the child as a Christmas present, so the parents approved of it. I think in Hazelwood, we talk about this decision not being in the hands of the judges, but in the hands of parents and school administrators. So we're here to kind of have to make a decision between which of those decision makers made the correct decision. Yeah. And I would agree— Oh, sorry. Go ahead. So following up on Judge Bush's question, I think it's common knowledge that many people in our country use the word fuck all the time. Some people are saying it like every other word when they're talking. You can hear that on TV and such. So does that mean then, because people commonly use the word fuck, that the school could not prevent middle school students from wearing a T-shirt that says fuck? No. No, Your Honor. I would like to point the course. I think this answers both Judge Bush and Judge Moore's questions simultaneously, pointing to a portion of— But could they say fud on the T-shirt? Would that be— So I think this takes back to what we commonly see in schools these days. We don't see students coming to school with the word fuck on a T-shirt. They're commonly bringing things with innuendos. And I gave a couple examples in my brief of the Fetzlock. It's all implied profanity because they think it's funny. And currently, it's not allowed under the dress code. And I know this is a case of first impression. It's a case that— But what's the principle that guides the administrators then? Let's say they have some discretion to decide that something that's not explicitly profane can still be banned. What is the governing principle? Is it this— Do we just ask whether it was manifestly unreasonable, which is what Boroff's language, but I don't know where that comes from. Is it something from Fraser? What is the reviews? How do we ensure ourselves that there isn't just unlimited discretion to declare anything profane? Well, and I think that Boroff does a good job of explaining if it's reasonably considered to be profane, vulgar, lewd. And I would say that in this case, when you have a situation where you have a slogan that has one well-known profane meaning, and when you have kids that come to school that this is the type of clothing that they wear, it's implied profanity, it's implied vulgarity, and the measuring tool of the reasonableness. And when it has nothing to do with a political viewpoint, the prohibition of asking the student to take off the sweatshirt has nothing to do with the political viewpoint that that sweatshirt is also expressing, then it's not violating the First Amendment. Do you think the political nature of the speech should have any impact on our analysis? I think that the political impact should have an impact on the analysis to the extent that that was the driving force behind the prohibition. The First Amendment is meant to protect against government intrusion on those First Amendment rights. Right. The point is, this is an expression of disapproval of the President. Should that have greater protection in a school than if someone just comes in with a T-shirt that has some profane euphemism on it that has nothing to do with politics? I would argue that the answer to that would be no, because the prohibition itself was based on the fact that it was a profane message as opposed to the political viewpoint that also was being expressed, that that changes the analysis, and that's why Frazier would apply in this case. Frazier, that speech was given at an assembly. Was that really political speech in Frazier? I would say that it was political speech. What authority did the – were they really electing anyone who had any kind of real authority in that election? Was that really politics, or would that just play politics at a high school? I think a student advocating for another student in a student council context, the whole point of that speech was for a political viewpoint. And I don't think the Supreme Court characterized it as political speech, did it? I think the Supreme Court has said that distinguishing Frazier from Tinker and why the Tinker substantial disruption standard did not have to apply in that case was because the prohibition itself and the punishment was unrelated to any political viewpoint. Right, so it was not political speech, essentially, they said in the case. I would say that it's not that it's not political speech, it's that the punishment associated with the speech was unrelated to the political aspect of that speech. And that's the position of the school board here, that it would have been fine to say you were pro or con any given political figure, that that is perfectly fine and it's totally irrelevant which figure it is pro or con, but when it is fuck somebody, that that's different. And then the question of whether this speech was known to be the equivalent of fuck. That's correct, Your Honor. I did want to make one last point, too, about even if this court were to decide that Tinker does apply here, that this case still, Bukema and Bradford, the two individual defendants here, would still be entitled to qualified immunity because the right at issue isn't clearly established. This really is a case that's unique. It presents a unique set of facts. It has not been decided by any court, let alone the Supreme Court or the Sixth Circuit. This wasn't decided by the district court, was it? Pardon? Tinker was not decided by the district court. Tinker was not applied by the district court, but the district court decided that under Frazier there was no consequence. Right, so I'm wondering should we remand it for the district court to apply the Tinker analysis in the first instance? We would argue that Frazier was properly applied, but even if… But assuming we ruled that Frazier was not applicable, that Tinker is the standard, what's the remedy? I don't think it would be necessary in this case because, as I was pointing to, there still would be qualified immunity available for the individual defendants. But did the district court rule on qualified immunity? They did under the first prong of qualified immunity. Based on Frazier? Correct. So if we hold that Frazier is not the correct standard, we don't have a ruling from the district court on qualified immunity as it applies to Tinker, do we? I guess in a roundabout way you might… We'd have to send it back for that issue as well, wouldn't we? I'll be honest, I don't know, Your Honor. I would say that it sounds to me that you should be able to, like still under that second prong, because neither prong has to be decided one or the other. If this court were to decide that it wasn't clearly established, based on the clearly established element of the second prong of qualified immunity, I don't think it needs to be remanded back to analyze the first prong before you can decide the second prong of qualified immunity. Were there defendants here other than the two individuals? The school district as well, yes. I have 13 seconds left. Any other questions? We'll accept your gift of 10 seconds. Thank you. Thank you, Your Honors. My concern is qualified immunity here. Why don't they have qualified immunity? Two points there, Judge Bush. First is that we still have an equitable claim against the prohibition and a claim against the school district, neither of which are subject to qualified immunity. But specifically on the issue of whether these two teachers, whether these two administrators are entitled to qualified immunity, the first thing we do is look at whether the other school district was clearly established. There is no question that Tinker clearly established a First Amendment right of America's public school students to wear political apparel to school. And so when my friends on the other side come with an exception, they have to explain how this exception can conceivably apply. And our contention is that like a radio, like an edited version of a song on the radio, no reasonable official could deem a non-profane slogan that does not have any whiff of profanity to be profane. There might be other arguments that it qualifies. I don't understand why they couldn't look at Frazier and think, I mean, you know, profanity trumps political. Innuendo or something that's not, you know, on its face profane can be prohibited under Frazier. If I put those together, plus I have discretion under in loco parentis doctrines and the original understanding of the First Amendment, I don't know why it wouldn't, maybe they're wrong. You make a compelling case why that might be, but I don't know why it would be obvious to them that that was the right answer. So a couple of thoughts here, Judge Nalbandian. First is that the en banc Third Circuit, the en banc Fifth Circuit, and the Ninth Circuit have all held that a plain reading of Frazier leads to a result that it governs only plainly profane or lewd speech. What we have here is not even shrouded profanity. It is an intentionally- The Third Circuit case is probably the closest one, and it's pretty sharply divided. So, I mean- Doesn't that show that there's a question that is not clearly established if you have the Third Circuit with people like Judge Hardiman and the dissent? No, Your Honor, because what is clearly established, even within this circuit, is that school districts cannot use their own discretion to expand Frazier's narrow categories, and I'll use one of the Confederate flag cases as my example. In Barr v. Lafon, Judge Moore, in your opinion, in footnote 7, you noted that the school district there attempted to argue that the Confederate flag was offensive under Frazier, and Your Honor, in this court, rejected that argument. That wasn't Boroff. Why couldn't somebody look at Boroff and say, well, I'm not being manifestly unreasonable, and you both are arguing about whether Moore trumps Boroff, whether it survived, whether Justice Alito's concurrence is controlling. I mean, all of that is well beyond what a school administrator sitting in their office would be thinking about. I mean, I think it would be hard for us to say that's clearly established. Your Honor, I see I'm out of time. May I briefly respond? Yes. On the issue of Boroff, the reason- It's inapplicable for two reasons. First, it did not involve political speech. The Supreme Court in Tinker and Frazier and Mahanoy have all emphasized that political speech is on a different plane, and Boroff itself- But Cohen is not good law anymore, so fuck the draft is political, but the Supreme Court was wrong because it was political. No, Your Honor. Plainly profane language is still prohibitable under Frazier, but at the point that a student has completely scrubbed the profanity from their message, it is not profane within the meaning of Frazier, and Tinker still reigns. Thank you both for the argument. The case will be submitted.